IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CLINTINA TAYLOR, individually and as guardian for NIVEA TAYLOR, a minor child, on behalf of themselves and others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF CHICAGO, ILLINOIS and CHICAGO POLICE OFFICER JAMES REGNIER <br><br> Defendants. | **JURY TRIAL DEMANDED** <br><br> No. 09 CV 7911 <br><br> Honorable Judge Joan Lefkow |

**PLAINTIFFS' RESPONSE TO DEFENDANT'S 12(b)(6) MOTION TO DISMISS PLAINTIFFS' FEDERAL AND STATE CLAIMS**

NOW COME CLINTINA TAYLOR, individually and as guardian for her daughter, NIVEA TAYLOR (individually and collectively herein, "Plaintiffs"), by and through their attorneys, and request that this Court deny the Rule 12(b)(6) Motion to Dismiss of Defendants CITY OF CHICAGO, ILLINOIS, and CHICAGO POLICE OFFICER JAMES REGNIER ("Defendants"), stating as follows:

**BACKGROUND**

On December 22, 2009, Plaintiffs Clintina Taylor and Nivea Taylor, filed a civil complaint ("Complaint") against Defendants City Of Chicago, Illinois, and Chicago Police Officer James Regnier. The Complaint sets for several counts stemming from an incident in September 12, 2009, when Chicago Police Officer James Regnier responded to a 911 call pertaining to loose dogs where Plaintiffs reside. When he arrived on the scene, Plaintiffs' dog "Brick" was standing still, wagging his tail, and exhibiting no signs of aggression.

1

Nonetheless, Defendant Regnier drew his gun and pointed the gun at Brick. A neighbor who was present and witnessed Defendant Regnier draw his gun told Defendant Regnier not to shoot, and that Brick was a friendly dog that belonged to Plaintiffs, who lived just around the corner. By this time, Plaintiffs, family, and friends were also on the scene as Defendant Regnier stood, poised to shoot. Deaf to the protestations of neighbors, and blind to Brick's docile and friendly temperament, Defendant Regnier fired a shot, hitting Brick and causing him serious injury.

Notably, the City of Chicago does not appear to provide guidelines for police officer training or interaction with pets, but rather its applicable guidelines make no distinction between pets (or citizens' property interests) and a wild or domesticated animal. Despite such allegations, Defendants move to dismiss pursuant to Rule 12(b)(6) (hereinafter, the "Motion").

Plaintiffs complaint contains ten counts: Count I (42 U.S.C. §1983 and United States Constitution, against Police Officer James Regnier), Count II (42 U.S.C. § 1983 "Monell" Claim, against City Of Chicago, Illinois), Count III (Excessive Force 42 U.S.C. § 1983, against Police Officer James Regnier), Count IV (Willful And Wanton Misconduct against Police Officer James Regnier), Count V (Negligence against Police Officer James Regnier), Count VI (Intentional Infliction Of Emotional Distress Against Police Officer James Regnier), Count VII (Negligent Infliction Of Emotional Distress Against Police Officer James Regnier), Count VIII (Trespass To Chattels Against Police Officer James Regnier), Count IX (Aggravated Cruelty, 510 ILCS 70/3.02 against Police Officer James Regnier), and Count X (Declaratory Relief Against The City Of Chicago and Police Officer James Regnier).

While the Motion asks this Court to dismiss "the complaint," (Mot. at 1), Defendants assert no substantive argument for dismissal of Count IV (Willful And Wanton Misconduct

against Police Officer James Regnier), or Count VI (Intentional Infliction Of Emotional Distress Against Police Officer James Regnier). Nor do Defendants argue a basis for dismissal of Count X (Declaratory Relief Against The City Of Chicago and Police Officer James Regnier), which Plaintiffs bring individually and on behalf of a Class of pet owners in the City of Chicago. Therefore, the Court should not consider the Motion applicable to Counts IV, VI, and X.

## STANDARD OF REVIEW

When ruling on a Rule 12(b)(6) motion, courts accept as true the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Lashbrook v. Oerkfitz*, 65 F.3d 1339, 1343 (7th Cir.1995); *Harris v. City of Auburn*, 27 F.3d 1284, 1285 (7th Cir. 1994). Then, a court will dismiss the complaint only when it appears beyond a doubt that the plaintiff can prove no consistent set of facts that would entitle it to relief. *Chaney v. Suburban Bus Div'n*, 52 F.3d 623, 627 (7th Cir. 1995). Courts limit this inquiry to the allegations contained in the complaint, with the limited exception of documents referenced in, or attached to, the complaint. Fed. R. Civ. P. 12(b), 10(c); *Venture Assocs. Corp. v. Zenith Data Sys.*, 987 F.2d 429, 431 (7th Cir.1993); *Beam v. IPCO Corp.*, 838 F.2d 242, 244 (7th Cir. 1988).

## ARGUMENT

Defendants seek to dismiss outright, and as a matter of law, claims which by their nature are predicated on reasonableness and are thus ill-suited for Rule 12(b)(6) adjudication. In Defendants' Motion, moreover, it is unclear which specific claims Defendants are praying for this Court to Dismiss. However, Plaintiffs address, in respective order, Defendants' arguments.

I.  **PLAINTIFF'S FEDERAL CLAIMS ARE SUFFICIENTLY PLEADED.**

Defendants' Motion first addresses Plaintiffs' Federal claims, including Count I (42 U.S.C. §1983 and United States Constitution, against Police Officer James Regnier), Count II

3

(42 U.S.C. § 1983 "Monell" Claim, against City Of Chicago, Illinois), and Count III (Excessive Force 42 U.S.C. § 1983, against Police Officer James Regnier).

### A. Count I – 42 U.S.C. §1983 And United States Constitution Against Defendant Regnier.

Plaintiffs' Count I, alleging Section 1983 liability under the Fourth and Fourteenth Amendment of the United States Constitution, asserts that Defendant Regnier was acting under color of state law when he shot Plaintiffs' dog despite the dog's docile and non-aggressive posture. Defendants ask this Court to dismiss Plaintiffs' claim because of failure to state a claim under both the Fourth and Fourteenth Amendments.

#### 1. Plaintiffs State A Claim For Which Relief Can Be Granted Under The Fourth Amendment Of The United States Constitution Because Defendant Regnier's Unreasonable Shooting Of Brick Meaningfully Interfered With Plaintiffs' Possessory Interests In Property (Brick).

Defendants deny that a Fourth Amendment claim is cognizable in this case, and further contend that even if the incident gives rise to a Fourth Amendment claim, Defendant Regnier's actions do not constitute a violation that "rises to constitutional magnitude." (Mot. at 3).

To the contrary, the destruction of Plaintiffs' property (Brick) constitutes a Fourth Amendment seizure and is subject to the Fourth Amendment analysis. The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures...." U.S. Const, amend. IV. In 1984, the United States Supreme Court in *Jacobsen* specifically addressed the scope of the term "seizure" as it relates to property. *United States v. Jacobsen*, 466 U.S. 109, 104 S. Ct. 1652 (1984). According to the *Jacobsen* Court, "[a] 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *Id.*

After *Jacobsen*, Courts have routinely recognized that harm done by a police officer to an

4

owner's domestic pet gives rise to a Fourth Amendment claim. Specifically, constitutional violations arising from the shooting of a dog are cognizable as an unreasonable seizure of the dog owner's property under the Fourth Amendment. *See Viilo v. Eyre*, 547 F. 3d 707, 709-10 (7th Cir. 2008); *Kay v. County of Cook, Illinois*, 2006 WL 2509721, *4 (N.D. Ill. 2006) (unreasonable shooting of dog analyzed properly analyzed under Fourth Amendment); *Viilo v. City of Milwaukee*, 552 F.Supp.2d 826, 842 (E.D. Wis. 2008) ("Several courts have recognized that the killing of a pet dog by a police officer constitutes a seizure analyzed under the Fourth Amendment").[1]

Plaintiffs' Complaint sets forth in plain, simple terms the grave manner in which Defendants' shooting of Plaintiffs' dog meaningfully interfered with Plaintiffs' possessory interest in their dog. After the shooting, moreover, Plaintiffs' dog was not the same, and clearly suffered from serious health issues, which affected his interaction with Plaintiffs post-shooting. Additionally, Plaintiffs were forced to incur veterinary bills for treatment of Brick's bullet wound. Clearly too, a dog who has incurred a bullet wound is worth less than the same dog who has not – which diminishes the value (and resale value) of the dog. *See also* Compl., ¶ 30. Defendant Regnier's shooting, in turn, very meaningfully interfered with Plaintiffs' property interest. Thus, Plaintiffs have set forth a Fourth Amendment claim for which relief can be granted, and therefore, Defendants' Motion should be denied.

---

[1] *See also San Jose Charter of the Hells Angels Motorcycle Club v. City of San Jose,* 402 F.3d 962, 975 (9th Cir. 2005) (killing dog is seizure under Fourth Amendment); *Altman v. City of High Point,* 330 F.3d 194, 204-05 (4th Cir. 2003) (by destroying dog, police officers "seized" plaintiff's effects); *Brown v. Muhlenberg Twp.,* 269 F.3d 205, 210 (3rd Cir. 2001) (officer's destruction of plaintiff's dog constituted Fourth Amendment seizure). Further, it stands to reason that if the Fourth Amendment protects a person's television set and couch, a family pet falls under this same analysis. *See Pepper v. Village of Oak Park,* 430 F.3d 805, 809 (7th Cir. 2005) (couch and television set are personal "effects" protected under Fourth Amendment.); *see also Anzalone v. Kragness,* 356 Ill. App.3d 365, 369, 826 N.E.2d 472 (Ill. App. Ct. 2005) ("in the eyes of common law, a pet 'is an item of personal property'").

Defendants further allege dismissal of Plaintiffs' Fourth Amendment claim is appropriate because the shooting of the dog was "non-fatal" and the dog was "running through the neighborhood."[2] The fact that the shooting was "non-fatal" is an absurd defense to a Fourth Amendment claim. Unsurprisingly, no legal authority exists to support the point that a Fourth Amendment claim in this type of case requires the animal to die as a result of a shooting. In fact, to the contrary, when a dog lives through the shooting, owners' property interest in their dogs is more significantly impaired than if the dog died, given the resulting veterinarian care, attention, and burden on the pet owner after a non-fatal shooting. The mere fact that Brick did not die as a result of the shooting in no way impacts the viability of Plaintiffs' Fourth Amendment claim.

Similarly, because a dog was "running through the neighborhood" does not eviscerate a Fourth Amendment count. This is a gross mischaracterization since the dog was on the same block Plaintiffs lived, close to Plaintiffs' home, and not "running through the neighborhood." In fact, as pleaded, when Defendant Regnier encountered Brick, Brick was docile, still, non-threatening, and wagging his tail in the moments immediately before the shooting. Ultimately, Defendant Regnier's shooting was imminently unreasonable,[3] and therefore, a Fourth Amendment claim is both viable and likely successful.

In short, Defendants' Motion should not be granted merely because Brick survived the shooting or was shot a block away from Plaintiffs' home. Both facts are inapposite because they

---

[2] Defendant relies on *Brandon v. Village of Maywood*, 157 F. Supp. 2d 917, 930-31 (N.D. Ill. 2001). This case is highly distinguishable because in *Brandon*, a criminal defendant was violently resisting arrest at the same time his dog approached officers and began interfering with offers' attempts to secure and detain the criminal defendant. In this case, there was no collateral arrest, and Plaintiffs' dog was standing still and was not threatening anybody at the time Defendant Regnier shot the dog. Compl., ¶¶ 20-24.

[3] *Green v. Butler*, 420 F.3d 689, 694 (7th Cir. 2005); *Texas v. Brown*, 460 U.S. 730, 739, 103 S. Ct. 1535, (1983) (…Fourth Amendment's central requirement is one of reasonableness of actions of Defendant officer); *Viilo v. Eyre*, 547 F.3d 707, 710 (7th Cir. 2008) (holding that when a police officer shoots a dog owned by a Plaintiff, the relevant inquiry is the reasonableness of the offers' decision to shoot the dog).

do not establish Plaintiffs' failure to state a claim, which is the standard relevant to consideration of the Motion.

### 2. Plaintiff States A Claim For Which Relief Can Be Granted Under The Fourteenth Amendment Of The United States Constitution, And Such Claim Should Not Be Dismissed Until Further Discovery Takes Place.

Defendants, relying on *Kay*, allege that the shooting of Plaintiffs' dog cannot give rise to a Fourteenth Amendment violation because the Fourth Amendment provides an explicit textual source of constitutional protection against the same sort of physically intrusive governmental conduct. *Kay v. County of Cook, Illinois*, 2006 WL 2509721, *4 (N.D. Ill. 2006). Notably, in *Kay*, the Court denied the defendant's Motion to Dismiss the Fourteenth Amendment count, and instead, reserved judgment on the claim until the parties briefed summary judgment.

Similarly, here, summary judgment is not before the Court. Dismissing Plaintiffs' Fourteenth Amendment claim would be premature since Plaintiffs would be prejudiced if, upon further discovery, facts emerge that cause Plaintiffs to abandon their *Fourth* Amendment claim. In that instance, Plaintiffs would have prematurely lost access to their Fourteenth Amendment claim. In short, dismissal of the Fourteenth amendment claims is premature at best, and prejudicial at worst. Further, Plaintiffs should not be deprived of the ability to plead a Fourteenth Amendment claim in the alternative.

### B. Count III – Excessive Force 42 U.S.C. § 1983, Against Defendant James Regnier.

Plaintiffs' Count III, alleging excessive force against Police Officer James Regnier, asserts that Defendant Regnier used excessive force on Plaintiffs when he shot Brick. Defendants contend that Plaintiffs cannot state a viable claim for which relief can be granted because dogs cannot plead a claim for excessive force since "dogs do not have constitutional rights." Notably, the claims are not brought by the *dog*. Instead, *Plaintiffs* bring a claim for

excessive force due to their witness of Defendant Regnier's unreasonable shooting of Brick in close proximity to Plaintiffs, including Nivea Taylor, a minor child.

Indeed, persons not actually subjected to excessive force, but who witness its use, may, depending on the circumstances, have a § 1983 claim for violation of their constitutional rights. *Mendez v Rutherford*, 655 F. Supp 115 (N.D. Ill. 1986). Moreover, excessive force claims may arise out of a Defendants' use of force on Plaintiffs' personal property. At this stage of the proceedings, Defendants' attempt to neatly foreclose liability for this count should be rejected.

### C. Count II – 42 U.S.C. § 1983 "Monell" Claim, Against City Of Chicago And Defendant Regnier.

Next, Defendants contend, in a single cursory sentence, that Officer Regnier is entitled to qualified immunity for any constitutional claims alleged by Plaintiffs. Then, Defendants summarily assert, because of qualified immunity, Plaintiffs are unable to state a *Monell* claim for which relief can be granted. To the contrary, Plaintiffs assert throughout their Complaint facts under which qualified immunity would not shield Defendant Regnier and which establish a cognizable *Monell* claim for which relief can be granted.

#### 1. Defendant Regnier Is Not Entitled To Qualified Immunity For Constitutional Claims Because He Violated Plaintiffs' Clearly Established Constitutional Right.

When determining whether qualified immunity shields a public official from a Section 1983 action, the court undertakes a two-part inquiry. *Borello v. Allison*, 446 F.3d 742, 746 (7th Cir. 2006). The court's first inquiry is whether the facts, viewed in the light most favorable to Plaintiffs, show that a Defendant violated a constitutional right. *Id.*; *Jones v. Wilhelm,* 425 F.3d 455, 460 (7th Cir. 2005). Second, if the facts comprise a constitutional violation, the court must determine whether the constitutional right was clearly established at the time of the defendant's conduct such that a reasonable official would have known that his conduct would have violated

8

the constitution. *Wernsing v. Thompson,* 423 F.3d 732, 742 (7th Cir. 2005); *Wilson v. Layne*, 526 U.S. 603, 609, 119 S. Ct. 1692 (1999).

### a. Plaintiffs' Complaint Sets Forth Facts That, Taken In The Light Most Favorable To Plaintiffs, Establish That Defendant Regnier Violated A Constitutional Right Under The Fourth Amendment.

As more fully discussed above, it is well-established that destroying an individual's personal property is a seizure under the Fourth Amendment. Specifically, the Supreme Court's 1984 decision in *United States v. Jacobsen* reaffirmed the established principle that a Fourth Amendment seizure of property occurs when there is a meaningful intrusion with an individual's possessory interest in property and that the destruction of property constitutes a seizure under the Fourth Amendment. *Jacobsen,* 466 U.S. at 113, 124-25.

Moreover, the Supreme Court has explicitly held: "In the ordinary case, the Court has viewed a seizure of personal property as per se unreasonable within the meaning of the Fourth Amendment unless it is accomplished pursuant to a judicial warrant issued upon probable cause and particularly describing the items to be seized." *United States v. Place*, 462 U.S. 696, 701, 103 S. Ct. 2637 (1983).

### b. Plaintiffs' Constitutional Rights Under The Fourth Amendment Were Clearly Established At The Time Of The Violation.

A relevant, dispositive inquiry in determining whether a plaintiff's right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Brosseau v. Haugen*, 543 U.S. 194, 125 S. Ct. 596, 599 (2004) (per curiam). *See also Anderson v. Creighton*, 483 U.S. 635, 640-41, 107 S. Ct. 3034 (1987).

Simply put, since at least the *Jacobsen* decision in 1983, warrantless seizures are generally considered *per se* unreasonable. Based on this established Supreme Court case law, destroying an individual's personal property, especially without a warrant, implicates an

9

individual's Fourth Amendment right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Therefore, Plaintiffs' constitutional rights were clearly established at the time of Defendant Regnier's shooting.

Moreover, a reasonable officer, when faced with a non-threatening, docile and stationary dog, would not shoot the dog. Defendants do not deny that Brick was not approaching or charging Defendant Regnier or bystanders. Nor do Defendants deny that, as pleaded, Brick was not exhibiting any threatening conduct.

In short, the facts laid out in the Complaint set forth claims for which relief can be granted, and for which qualified immunity will not preclude Defendant Regnier's liability on Constitutional claims.

### 2. Plaintiffs Assert Facts That Support A Cognizable *Monell* Claim, And Therefore, Dismissal Is Inappropriate.

Defendants ask this Court to dismiss Plaintiffs' Monell claim based only on the single sentence stating that Defendant Regnier cannot be found individually liable under *Monell*. However, Plaintiffs do not assert a *Monell* claim against Defendant Regnier. Instead, the claim is against Defendant City of Chicago.

Pursuant to *Monell v. Department of Social Services*, 436 U.S. 658, 694, 98 S. Ct. 2018 (1978), a public entity defendant sued in his official capacity cannot be held liable under a theory of respondeat superior; rather, a defendant must act as a lawmaker or one "whose edicts may fairly be said to represent official policy." *Id.* at 693.

There are three alternative ways in which Plaintiffs may state a claim for relief under *Monell. Monell v. Dep't of Social Servs.,* 436 U.S. 658, 690 (1978). First, a city may be sued directly under § 1983 where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and

10

promulgated by [the city's] officers." *Id.* Second, § 1983 liability attaches "for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels." *Id.* at 690-91. Finally, an allegation of a municipality's "failure to train" its employees can provide the basis for liability under § 1983 in certain circumstances. *Canton v. Harris,* 489 U.S. 378 (1989).

In this case, Plaintiffs have asserted facts sufficient to establish a claim for which relief could be granted under any one of these three theories. First, Plaintiffs directly challenge the City of Chicago's inadequate practices or policies dictating how police interact with pets. *See also* Compl., ¶¶ 100-106. The policies governing how police officers interact with pets will be a central concern in discovery because whether the policies are written (establishing the first theory of *Monell* liability), or whether the policies are "custom" (establishing the second theory of *Monell* liability), or whether no official policies exist and officers are not trained to properly and constitutionally interact with pets (establishing the third theory of *Monell* liability), Plaintiffs still state a claim for which relief can be granted. Indeed, pursuant to Defendant's policies and procedures, "other pets in Chicago have been wrongfully or unnecessarily shot or otherwise injured by Chicago Police Officers." Compl., ¶ 3. In any event, dismissal of Plaintiffs' *Monell* claim against the City of Chicago is premature.

Curiously, Plaintiff relies upon *Durkin* to establish that if the individual officer is not liable for a constitutional violation, then the relevant municipality cannot be liable. *Durkin v. City of Chicago*, 341 F. 3d 606 (7th Cir. 2003). However, in *Durkin,* Judge Bucklo's ruling was the result of a plaintiff alleging a *Monell* claim against an officer of the city without alleging an underlying constitutional violation. *Id.* at 615 (holding "Durkin claims that under 42 U.S.C. § 1983, the City is liable because a person with final policy making authority caused her

11

constitutional injury…However, a municipality cannot be found liable if there is no finding that the individual officer is liable on the underlying substantive claim…since Durkin did not suffer a constitutional injury, she has no claim against the municipality). *Durkin* is highly distinguishable from this case, where Plaintiffs have stated several constitutional claims for which relief may be granted. Unlike *Durkin*, Plaintiffs in this case have established that they suffered from alleged constitutional injury rooted in their Fourth Amendment rights.

Lastly, dismissal of Plaintiffs' *Monell* claim is inappropriate given that *Monell* liability may be imposed on a municipality for even a single decision made by a policymaker who has the final decision making authority in that area of the business. *Angarita v. St. Louis County*, 981 F.2d 1537, 1546 (8th Cir. 1992); *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986). Like in *Angarita*, Defendant Regnier had final decision making authority on whether to shoot Brick or hold fire.

Ultimately, *Monell* liability is clearly set forth in Plaintiffs' individual and class claims such that dismissal is inappropriate.

## II. PLAINTIFFS' STATE LAW CLAIMS ARE SUFFICIENTLY PLEADED.

Defendant very generally argues that Plaintiffs state law claims should be dismissed for two reasons: first, because Defendant Regnier was acting within the scope of his job duties; and second, because Defendant Regnier cannot be held liable for a criminal statute asserted in a civil complaint.

**A. Count V (Negligence Against Police Officer James Regnier), Count VI (Intentional Infliction Of Emotional Distress Against Police Officer James Regnier), And Count VIII (Trespass To Chattels Against Police Officer James Regnier) Should Not Be Dismissed Because Defendant Regnier Was Not Acting Within The Scope Of His Job Duties.**

With respect to Plaintiffs' Count V (Negligence against Police Officer James Regnier), Count VI (Intentional Infliction Of Emotional Distress Against Police Officer James Regnier), and Count VIII (Trespass To Chattels Against Police Officer James Regnier), Defendants contend only that Defendant Regnier cannot be held liable because a police officer acting within the scope of his duties as a police officer, and while attempting to enforce or execute the law, cannot be held liable for mere negligence or conduct short of "willful and wanton misconduct."

However, throughout Plaintiffs' complaint, factual allegations are made that establish Defendant Regnier was acting outside the scope of his duties when he chose to shoot Brick. Defendants' Motion again expends only a single sentence, claiming that Defendant Regnier was acting in his official duties. Plaintiffs disagree; Defendants fail to establish or provide a statute or law that Defendant Regnier was lawfully executing, which must be proven in order for the state law claims to be dismissed. Therefore, the state law claims must not be dismissed.

Further, personal liability under theories of negligence can still attach. It is clearly established that although officials may not be held liable for simple negligence when acting within their scope of duty, they may be held liable for "gross negligence" or "reckless disregard" for the safety of others. *E.g., Mendez v. Rutherford* 655 F. Supp. 115, 118 (N.D. Ill. 1986). In this case, Defendant Regnier chose to fire a gun when he was not threatened. Firing a gun, in the absence of any threat, while closely surrounded by several onlookers, individuals, and the minor Defendant, and/or in a manner which injured Plaintiffs and their property, clearly rises to the level of reckless disregard, and therefore, Plaintiffs have stated a claim against Defendant Regnier for which relief can be granted.

Defendant also argues that Defendant Regnier was acting within the scope of his duties

because Plaintiffs' assert, as an alternative theory of *Monell* liability, that Defendant Regnier was acting pursuant to an official custom or policy held by Defendant City of Chicago. Notably, Plaintiffs expressly plead in the alternative, *e.g.,* Compl., ¶ 38, and are expressly permitted to do so under Federal Rule of Civil Procedure 8(a)(3). Dismissal of either of the alternative counts this early into litigation, as such, would be extremely prejudicial to Plaintiffs. Moreover, since Defendants' Motion fails to affirmatively state that Defendant Regnier was acting pursuant to an official policy and fails to identify which policy or law Defendant Regnier was enforcing when he chose to shoot Brick, Plaintiffs' federal and state claims asserts causes for which relief could be granted, and therefore, should not be dismissed.

### B. Defendant Regnier's Violation Of The Aggravated Battery Statute Provides A Basis For Civil Liability.

Defendant mistakenly asserts that since Aggravated Cruelty under 510 ILCS 70/16.3 is a statute which imposes criminal liability, Defendant Regnier cannot be held civilly liable. Defendant relies on *Nelson*, which holds that criminal statutes *generally* do not provide for private civil causes of action. *Nelson v. Chertoff*, 2008 WL 4211577 (N.D. Ill. 2008). However, the Aggravated Battery statute is an exception in that the plain language of the statute provides, in relevant part, "[a]ny person who has a right of ownership in an animal that is subjected to an act of aggravated cruelty under Section 3.02 or torture under Section 3.03 in violation of this Act or in an animal that is injured or killed as a result of actions taken by a person who acts in bad faith under subsection (b) of Section 3.06 or under Section 12 of this Act *may bring a civil action to recover the damages*[4] *sustained by that owner.*" 510 ILCS 70/16.3 (emphasis added).

---

[4] "…Damages may include, but are not limited to, the monetary value of the animal, veterinary expenses incurred on behalf of the animal, any other expenses incurred by the owner in rectifying the effects of the cruelty, pain, and suffering of the animal, and emotional distress suffered by the owner. In addition to damages that may be proven, the owner is also entitled to punitive or exemplary damages of not less than $500 but not more than $25,000 for each act of abuse or neglect to which the animal was subjected. In

Thus, under the Aggravated Cruelty statute, Defendant Regnier can be held personally liable. Moreover, such unambiguous language of the statute clearly establishes such legislative intent. Further, Plaintiffs have stated a claim for which relief can be granted under the Aggravated Cruelty statute given Defendant Regnier's uncontested shooting of Brick when Brick was not exhibiting aggressive or threatening behavior.

Ultimately, Plaintiffs have set forth state law claims for which relief can be granted, and which, therefore, should survive Defendants' Motion.

**WHEREFORE**, for the foregoing reasons, Plaintiffs respectfully submit that the Court should deny the Motion to Dismiss. Furthermore, dismissal under Federal Rule of Civil Procedure 12(b)(6) is an extreme remedy in this case and ought not to be applied when discovery has not yet elucidated facts relevant to the pleaded claims.[5]

                                              Respectfully submitted,

                                              s/ Ilan Chorowsky
                                              Ilan Chorowsky
                                              **PROGRESSIVE LAW GROUP, LLC**
                                              222 W. Ontario St., Ste. 310
                                              Chicago, Illinois 60610
                                              (312) 787-2717 (voice)
                                              ilan@progressivelaw.com
                                              *Attorneys for Plaintiffs*

---

addition, the court must award reasonable attorney's fees and costs actually incurred by the owner in the prosecution of any action under this Section. The remedies provided in this Section are in addition to any other remedies allowed by law. In an action under this Section, the court may enter any injunctive orders reasonably necessary to protect animals from any further acts of abuse, neglect, or harassment by a defendant." 510 ILCS 70/16.3.

[5] Alternatively, to the extent the Court finds any deficiencies in Plaintiffs' pleading, Plaintiffs respectfully suggest that any such deficiencies are merely technical, and that they be given leave to replead.

**CERTIFICATE OF SERVICE**

    I, Ilan Chorowsky, hereby certify that a copy of the foregoing pleading was filed electronically on May 21, 2010, with the United States District Court for the Northern District of Illinois, Eastern Division. Notice of this filing will be served upon counsel for the parties of record by operation of the Court's electronic filing system.

                                                                         /s Ilan Chorowsky