IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **CLINTINA TAYLOR, individually and as guardian for NIVEA TAYLOR, a minor child, on behalf of themselves and others similarly situated,** | ) ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| v. | ) ) ) | No. 09 CV 7911 <br><br> **Judge Joan H. Lefkow** |
| **CITY OF CHICAGO, ILLINOIS, and CHICAGO POLICE OFFICER JAMES REGNIER,** | ) ) ) ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

Clintina Taylor ("Clintina"), individually and as guardian for her daughter, Nivea Taylor ("Nivea") (collectively, "plaintiffs"), filed a ten-count complaint against the City of Chicago, Illinois (the "City") and Chicago Police Officer James Regnier ("Officer Regnier") (collectively, "defendants"). Plaintiffs' complaint consists of claims for civil rights violations pursuant to 42 U.S.C. § 1983, in addition to various state law claims, arising from the non-fatal shooting of plaintiffs' dog, Brick.[1] Before the court is defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, defendants' motion [#14] is granted in part and denied in part.

---

1 The court has jurisdiction under 28 U.S.C §§ 1331 and 1367(a).

## BACKGROUND[2]

On September 12, 2009, Clintina hosted a gathering in her backyard. Someone accidentally left the gate to the backyard open. Later that evening, Brick, a four-year-old neutered dog with no biting history who had completed intermediate and advanced obedience classes, left plaintiffs' property. A neighbor informed Clintina that Brick was loose. "Almost immediately or shortly thereafter, Officer Regnier responded to a 911 call pertaining to loose dogs and arrived on Taylor's block." Compl. ¶ 18. An agent from Chicago Animal Care and Control also arrived around the same time.

When Officer Regnier arrived, he found Brick standing on the sidewalk near plaintiffs' home. Officer Regnier immediately drew his gun even though Brick was not biting, attacking, or threatening anyone and instead just standing still and wagging his tail. Plaintiffs' neighbor asked Officer Regnier not to shoot, as Brick was friendly and his owners were on their way to retrieve him. A seven-year-old girl and her family had even approached Brick to retrieve him for plaintiffs. Officer Regnier ignored these entreaties and the presence of the Chicago Animal Care and Control worker, shooting Brick instead. Plaintiffs, along with friends and neighbors, observed the shooting from across the street. Although Brick was not killed, plaintiffs suffered "out-of-pocket veterinarian costs, diminished value to Brick, and other damages" as a result of the incident. *Id.* ¶ 30.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6); *Gen. Elec. Capital Corp.* v.

---

[2] The following facts are taken from the complaint and are presumed true for the purpose of resolving the pending motion.

*Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997).  In ruling on a motion to dismiss, the court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor.  *Dixon* v. *Page*, 291 F.3d 485, 486 (7th Cir. 2002).  In order to survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of the claim's basis, but must also establish that the requested relief is plausible on its face.  *Ashcroft* v. *Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  The allegations in the complaint must be "enough to raise a right of relief above the speculative level."  *Twombly*, 550 U.S. at 555.  At the same time, the plaintiff need not plead legal theories.  *Hatmaker* v. *Mem'l Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010).  Rather, it is the facts that count.

## ANALYSIS

**I.     Federal Claims**

    **A.     Unreasonable Seizure Claim (Count I)**

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.  Pets are "effects" for purposes of the Fourth Amendment.  *Viilo* v. *Eyre*, 547 F. 3d 707, 710-11 (7th Cir. 2008); *see also Altman* v. *City of High Point, N.C.*, 330 F.3d 194, 201-03 (4th Cir. 2003) (discussing the evolution of what is considered an "effect" and concluding that privately owned dogs merit Fourth Amendment protection).  Defendants do not appear to dispute this but instead emphasize that the non-fatal shooting of a dog wandering loose through the neighborhood does not rise to the level of a Fourth Amendment violation.

A claim for a Fourth Amendment violation requires allegations of a "seizure" that was "unreasonable." *Belcher* v. *Norton*, 497 F.3d 742, 747 (7th Cir. 2007). "A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *United States* v. *Jacobsen*, 466 U.S. 109, 113, 104 S. Ct. 1652, 80 L. Ed. 2d 85 (1984). The Seventh Circuit, along with five other circuits, has recognized that the killing of a dog constitutes a seizure. *Viilo,* 547 F. 3d at 711 ("[U]nnecessarily killing a person's pet offends the Fourth Amendment."); *Maldonado* v. *Fontanes*, 568 F.3d 263, 270-71 (1st Cir. 2009); *San Jose Charter of Hells Angels Motorcycle Club* v. *City of San Jose*, 402 F.3d 962, 977-78 (9th Cir. 2005); *Altman*, 330 F.3d at 204-05; *Brown* v. *Muhlenberg Twp.*, 269 F.3d 205, 210-11 (3d Cir. 2001); *Lesher* v. *Reed*, 12 F.3d 148, 150-51 (8th Cir. 1994). The temporary removal or taking of a domestic animal qualifies as a seizure for purposes of the Fourth Amendment. *Siebert v. Severino*, 256 F.3d 648, 656 (7th Cir. 2001) (horse); *Ferrell* v. *Soto*, No. 06 C 5382, 2008 WL 342957, at *5 (N.D. Ill. Feb. 5, 2008) (dogs). Here, plaintiffs allege a variation on these seizures, the non-fatal shooting of their dog that decreased his value to them and required them to make additional expenditures to care for his injuries. While plaintiffs do not allege that their property was destroyed, they essentially allege that it was substantially damaged and lost value. Such devaluation may constitute a seizure. *See Pepper* v. *Village of Oak Park*, 430 F.3d 805, 809 (7th Cir. 2005) (a seizure occurred where plaintiff's couch was substantially damaged, although not permanently destroyed); *Brandon* v. *Vill. of Maywood*, 157 F. Supp. 2d 917, 930 (N.D. Ill. 2001) (plaintiff's claim for deprivation of due process based on injuries to her dog from a non-fatal shooting more appropriately characterized as a claim for unreasonable seizure of property). As

4

defendants have not demonstrated that plaintiffs could not prevail on their claim as a matter of law, the mere novelty of it does not require dismissal.

Defendants argue further that even if the shooting is considered a seizure, it cannot be found to have been unreasonable. In determining whether a seizure was unreasonable, or in other words "more intrusive than necessary," *Florida* v. *Royer*, 460 U.S. 491, 504, 103 S. Ct. 1319, 75 L. Ed. 2d 229 (1983), "[t]he nature and quality of the intrusion on the individual's Fourth Amendment interests" must be balanced "against the countervailing governmental interests at stake." *Graham* v. *Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989) (citation omitted) (internal quotation marks omitted). "[C]ommon sense . . . counsel[s] that the use of deadly force against a household pet is reasonable only if the pet poses an immediate danger and the use of force is unavoidable." *Viilo*, 547 F.3d at 710; *see also Brown*, 269 F.3d at 211 ("This does not mean, however, that the state may, consistent with the Fourth Amendment, destroy a pet when it poses no immediate danger and the owner is looking on, obviously desirous of retaining custody."). While "the bond between a dog owner and his pet can be strong and enduring," the state's interest may be heightened where the pet is at large and roaming unsupervised, "for at that point the [pet] ceases to become simply a personal effect and takes on the nature of a public nuisance." *Altman*, 330 F.3d at 205-06; *Brown*, 269 F.3d at 210-11 ("[T]he state's interest in protecting life and property may be implicated when there is reason to believe the pet poses an imminent danger. In [that] case, the state's interest may even justify the extreme intrusion occasioned by the destruction of the pet in the owner's presence.").

Whether the seizure was reasonable is a fact-bound inquiry inappropriate for a motion to dismiss.³ Plaintiffs have sufficiently alleged facts that could establish that Officer Regnier's actions were unreasonable under the circumstances. While it is true that Brick was no longer on plaintiffs' property and someone had called 911 to report that a dog was wandering loose, plaintiffs have pled facts that would overcome an argument that Brick posed an imminent danger. They have alleged that Brick had no biting history, is a social dog, and had completed advanced and intermediate professional obedience classes. At the time Officer Regnier prepared to shoot him, Brick had not strayed far from home and was standing still and wagging his tail. A seven-year-old girl was close to Brick, looking to retrieve him for plaintiffs. Although police have a "strong interest in not being injured by a dog with . . . an unknown propensity for violence," *Brandon*, 157 F. Supp. 2d at 931, one of plaintiffs' neighbors had informed Officer Regnier that Brick was friendly and that plaintiffs were coming to get him. Plaintiffs in fact were just across the street at the time Officer Regnier shot Brick. "The private Fourth Amendment possessory interests are obviously stronger when, although the dog is unleashed, the owner is nearby and attempting to assert control over the dog. And the public interest in control of the dog is correspondingly lessened when a private owner is available to assert control." *Altman*, 330 F.3d at 207; *see also Brown*, 269 F.3d at 209, 211-12 (it was unreasonable for an officer to shoot and kill a dog who had wandered into a parking lot where the owner had yelled to the officer not to shoot and the dog was not growling or acting in an aggressive manner). Because plaintiffs have pleaded a plausible claim, the court at this stage declines to dismiss the Fourth Amendment count on the basis that it does not rise to the level of a constitutional violation.

---

3 This is borne out by the fact that the cases cited by defendants are summary judgment decisions or appeals from them.

**B. Qualified Immunity**

In the alternative, defendants argue that Officer Regnier is entitled to qualified immunity on plaintiffs' unreasonable seizure claim. Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow* v. *Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). The qualified immunity determination involves two questions: (1) whether the facts establish a violation of a constitutional right and (2) whether the constitutional right was clearly established at the time of the violation. *Pearson* v. *Callahan*, --- U.S. ----, 129 S. Ct. 808, 815-16, 172 L. Ed. 2d 565 (2009) (citing *Saucier* v. *Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001). A right is clearly established if it is "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson* v. *Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987). While a determination of qualified immunity should be made "at the earliest possible stage in litigation," *Hunter* v. *Bryant*, 502 U.S. 224, 227, 112 S. Ct. 534, 116 L. Ed. 2d 589 (1991), it is a fact-bound inquiry often inappropriate for a motion to dismiss. *Alvarado* v. *Litscher*, 267 F.3d 648, 651-52 (7th Cir. 2001) ("Because an immunity defense usually depends on the facts of the case, dismissal at the pleading stage is inappropriate: '[T]he plaintiff is not required initially to plead factual allegations that anticipate and overcome a defense of qualified immunity.'" (alteration in original) (quoting *Jacobs* v. *City of Chicago*, 215 F.3d 758, 765 n.3 (7th Cir. 2000)); *Jacobs*, 215 F.3d at 775 (Easterbrook, J., concurring) ("Rule 12(b)(6) is a mismatch for immunity and almost always a bad ground of dismissal.

7

. . . [W]hen defendants do assert immunity it is essential to consider facts in addition to those in the complaint.").

Taking the facts alleged in the complaint as true and drawing all reasonable inferences in plaintiffs' favor, the court cannot conclude that qualified immunity shields Officer Regnier from liability at this stage. The unreasonableness of shooting and killing a pet that does not pose an immediate danger and where the use of force is avoidable was clearly established at the time of the incident. *Viilo*, 547 F.3d at 710-11. Although here Brick was not killed, the possibility existed, however slight, that by shooting at him, Officer Regnier would kill Brick. "[T]he very action in question [need not have] previously been held unlawful" for an officer to have been aware that he is violating a constitutional right. *Anderson*, 483 U.S. at 640. Because it is possible that the unlawfulness was apparent, the court declines to find that Officer Regnier is entitled to qualified immunity at this juncture.

## C. Substantive Due Process Claim (Count I)

Defendants further argue that plaintiffs' substantive due process claim should be dismissed because unreasonable dog shooting claims are properly analyzed under the Fourth Amendment. Where a particular constitutional amendment "provides an explicit textual source of constitutional protection against [that] sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Graham,* 490 U.S. at 395 (holding that excessive force claims must be analyzed under the Fourth Amendment rather than the Fourteenth). Claims stemming from the removal of pets or fatal dog shootings by law enforcement are cognizable under the Fourth Amendment. *See Viilo*, 547 F. 3d at 709-10; *Kay* v. *County of Cook, Ill.*, No. 05 C 3015, 2006

WL 2509721, at *3-4 (N.D. Ill. Aug. 29, 2006). The court has concluded that plaintiffs have stated a Fourth Amendment claim. Although they may not ultimately prevail on this claim, *Graham* counsels that plaintiffs' alternative theory that they were deprived of property in violation of the Fourteenth Amendment be dismissed as it is more appropriately characterized as a claim for unreasonable seizure of plaintiffs' personal effects.

### D.   Excessive Force Claim (Count III)

Plaintiffs' complaint alleges that "Officer Regnier used excessive force against Brick, which endangered and damaged [Clintina] and her minor daughter Nivea." Compl. ¶ 53. Plaintiffs recognize that they cannot bring a claim of excessive force on behalf of Brick or for Brick's injuries. Instead, they appear to claim that Officer Regnier's use of force on Brick violated *plaintiffs'* Fourth Amendment rights to be free from the use of excessive force, as they witnessed the shooting and were damaged by it. Plaintiffs cite to *Mendez* v. *Rutherford*, 655 F. Supp. 115 (N.D. Ill. 1986), as support for the proposition that witnesses to the use of excessive force may in certain circumstances have excessive force claims themselves. *Mendez* is distinguishable from this situation, however, as it narrowly held that, pursuant to the Due Process Clause, officers owe a special duty of care to minor children in an adult's custody "to avoid actions which through gross negligence or reckless disregard harm the children either emotionally or physically" when the officers have taken the adult into custody. 655 F. Supp. at 119. Such a situation is not present here.[4] Plaintiffs have not presented, and the court is unable to find, any case allowing a person to maintain a vicarious constitutional claim for witnessing the alleged excessive use of force on

---

4 Further, unlike here where plaintiffs attempt to assert a Fourth Amendment violation, the daughter in *Mendez* alleged a substantive due process violation. *See Mendez*, 655 F. Supp. at 118 & n.1.

another or an owner to maintain a constitutional claim for the use of force on his or her property.[5]

Thus, plaintiffs' excessive force claim must be dismissed.

### E. *Monell* Claim (Count II)

Defendants argue that "[b]ecause Officer Regnier is not liable for any Constitutional violation, plaintiffs cannot establish a *Monell* claim." Defs.' Mot. to Dismiss at 4. The court has concluded that plaintiffs have sufficiently alleged a claim for unreasonable seizure in violation of the Fourth Amendment. Defendants do not advance any alternative argument for dismissal of this claim, and the court will not construct such arguments for them.

## II. State Claims

### A. Negligence (Count V), Negligent Infliction of Emotional Distress (Count VII) and Trespass to Chattels (Count VIII)

Among their state law claims, plaintiffs contend that Officer Regnier acted negligently in shooting Brick, that Officer Regnier's actions, although negligent, caused plaintiffs emotional distress, and that the shooting of Brick constitutes a trespass to plaintiffs' chattels. Defendants argue that these claims should be dismissed, as an officer is statutorily immune from claims of negligence while attempting to enforce or execute the law. "A public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." 745 Ill. Comp. Stat. 10/2-202. For purposes of the Tort Immunity Act, willful and wanton conduct is "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 745 Ill. Comp. Stat. 10/1-210.

---

5 A court in this district has held, however, that a wife does not have a claim under § 1983 for emotional distress arising from witnessing the alleged violation of her husband's civil rights. *See Buikema* v. *Hayes*, 562 F. Supp. 910, 911 (N.D. Ill. 1983).

Although statutory immunity is an affirmative defense, *see Mich. Ave. Nat'l Bank* v. *County of Cook*, 732 N.E.2d 528, 535, 191 Ill. 2d 493, 247 Ill. Dec. 473 (2000), it may provide a basis for dismissal when the allegations of the complaint demonstrate the plaintiffs have pleaded themselves out of court. *United States* v. *Lewis*, 411 F.3d 838, 842 (7th Cir. 2005).

Defendants argue that it is clear from the complaint that Counts V, VI, and VIII deal only with the alleged negligent, and not willful or wanton, conduct of Officer Regnier in the scope of his duties as a police officer.[6] Plaintiffs respond that the complaint alleges that Officer Regnier was not attempting to enforce or execute the law when he shot Brick, making the Tort Immunity Act inapplicable. "The question of whether a police officer is executing and enforcing the law is a factual determination which must be made in light of the circumstances involved in each case." *Hudson* v. *City of Chicago*, 881 N.E.2d 430, 443, 378 Ill. App. 3d 373, 317 Ill. Dec. 262 (2007). Plaintiffs have alleged that Officer Regnier was responding to a 911 call, an activity found to be an act of executing or enforcing the law. *See, e.g.*, *Bruecks* v. *County of Lake*, 658 N.E.2d 538, 539-40, 276 Ill. App. 3d 567, 213 Ill. Dec. 68 (1995); *Morris* v. *City of Chicago*, 474 N.E.2d 1274, 1276, 130 Ill. App. 3d 740, 86 Ill. Dec. 77 (1985). Whether this protection extends to Officer Regnier's actions after he arrived at the scene and observed Brick doing nothing harmful is open to question at this stage. Because the immunity determination is inherently factual and plaintiffs have not clearly pleaded themselves out of court, plaintiffs' claims sounding in negligence will not be dismissed.

---

6 Plaintiffs have alleged separate claims for willful and wanton misconduct and intentional infliction of emotional distress, which the Tort Immunity Act does not shield Officer Regnier from.

### B. Aggravated Cruelty under 510 Ill. Comp. Stat. 70/3.02 (Count IX)

The Humane Care for Animals Act provides that "[n]o person may intentionally commit an act that causes a companion animal to suffer serious injury or death." 510 Ill. Comp. Stat. 70/3.02(a). Defendants seek to dismiss plaintiffs' claim founded on this provision, arguing that violations of criminal statutes do not provide a basis for civil actions. This is generally true. *See Chrysler Corp.* v. *Brown,* 441 U.S. 281, 316, 99 S. Ct. 1705, 60 L. Ed. 2d 208 (1979); *Chapa* v. *Adams*, 168 F.3d 1036, 1038 (7th Cir. 1999). The Humane Care for Animals Act, however, is an exception to that rule and explicitly imposes civil liability on violators of the statute. 510 Ill. Comp. Stat. 70/16.3 ("Any person who has a right of ownership in an animal that is subjected to an act of aggravated cruelty under Section 3.02 . . . may bring a civil action to recover the damages sustained by that owner."). Accordingly, plaintiffs may bring a claim for violation of the Illinois Humane Care for Animals Act.

### CONCLUSION AND ORDER

For the foregoing reasons, defendants' motion to dismiss [#14] is granted in part and denied in part. Plaintiffs' substantive due process and excessive force claims are dismissed. Defendants have until December 7, 2010 to answer the remaining counts of the complaint.

Dated: November 23, 2010        Enter: _____
                                       JOAN HUMPHREY LEFKOW
                                       United States District Judge